253 So.2d 180

**Minnie Louise K. CAMBRON et al.**

**v.**

**Charles KIRKLAND, Jr., et al.**

**8 Div. 429.**

Supreme Court of Alabama.

Sept. 23, 1971.

Lusk & Lusk, Guntersville, for appellants.

J. S. Stone, Guntersville, for appellees.

BLOODWORTH, Justice.

This is a boundary line dispute between coterminous landowners. From an adverse decree fixing the boundary line, complainants appeal.

On August 21, 1969, complainants filed a bill of complaint against Charles Kirk-

land, Jr., and his wife, Geraldine Kirkland, alleging as follows: that complainants own the East half of the NE ¼ of the NW ¼ of Section 29, Township 6, Range 3 East, in Marshall County, Alabama; that respondents own the ten acres adjoining on the West, being the East half of the West half of the same NE ¼; that the true boundary line between these two contiguous tracts is the line which divides the East half from the West half of the same NE ¼; that complainants' survey locates this line; that respondents Kirkland claim that their boundary line is located on complainants' property some 40 feet East of the true boundary line; that the respondents have taken possession of this disputed strip and have erected a shed on it; and, that the court should fix the true boundary line as complainants allege it to be and require respondents to remove their shed.

The testimony of the witnesses was taken by written depositions before the Register. On July 20, 1970, the cause was submitted to the trial court. On February 17, 1971, a final decree was rendered by the court fixing the boundary line substantially as contended for by the respondents. Though the trial court's decree stated that the complainants' survey correctly fixed the line between the East half and the West half of the said NE ¼, nevertheless, the court found that respondents had established title by adverse possession to the South half of the disputed strip. The following surveyor's map, which was introduced into evidence, may assist in an understanding of this case.

COMPLAINANT's EXHIBIT A/

Property of Mrs. Cameron
Marshall County, Alabama

[231Z]

Specifically, the trial court fixed the true boundary line as follows:

"Commence at a point on the North line which is equil-distance [sic] from the Northeast and Northwest corners of the Northeast Fourth of the Northwest Fourth of Section 29, Township 6 South, Range 3 East, in Marshall County, Alabama; thence South 665 feet and parallel with the East line and West line of said land; thence East 54 feet to the turnrow or ditch; thence South along said turnrow or ditch 665 feet to the South boundary of said land, and

parallel with the East and West boundaries of said land."

While the trial judge, in fixing the boundary line, based his decree on his finding that respondents had acquired a portion of the disputed strip by adverse possession, he also found that the drainage ditch or turnrow boundary line had been regarded as the line between the parties and their predecessors in title for a period exceeding the prescriptive period of twenty years.

■ In view of the fact that this cause was submitted on depositions, the trial court's decree comes to us unclothed with any presumption of correctness as to his conclusions on the facts. Lay v. Phillips, 276 Ala. 273, 161 So.2d 477 (1964). Therefore, "we must sit in judgment on the evidence." Henslee v. Merritt, 263 Ala. 266, 82 So.2d 212 (1955); Machen v. Wilder, 283 Ala. 205, 215 So.2d 282 (1968).

Being mindful of this duty, we have carefully read and reviewed the evidence, particularly that part which relates to the trial court's finding that respondents had acquired title to the disputed strip by adverse possession.

It appears the entire NE ¼ of the NW ¼ of Section 29, a forty acre tract, was once owned by one Mile Kirkland, father of complainant Minnie Louise K. Cambron, and grandfather of respondent Charles Kirkland, Jr. In 1939, Mile's son Charlie Kirkland purchased the twenty acres comprising the West half of the tract from his father. According to the testimony the forty acre tract was surveyed twice, once in 1940, and later in 1941, by a surveyor from Huntsville, Alabama. The survey in 1941 was paid for by Charlie Kirkland and, according to his testimony, was for the purpose of determining the line between him and his father. As a result of that survey he testified that a boundary line was established between the two tracts which was marked by a turnrow or ditch which he and Woody Cambron, the deceased husband of the complainant Minnie Louise K.

Cambron, plowed out. Complainant Minnie Louise K. Cambron, the daughter of Mile Kirkland, together with her husband Woody Cambron and their family, lived on the East twenty acre tract with Mile Kirkland. In 1947, Mile Kirkland deeded this twenty acre tract (the East half of the forty) to the complainant Minnie Louise K. Cambron and her husband on the condition that he (Mile Kirkland) be allowed to live with them until his death. Both Mile Kirkland and Woody Cambron are now deceased. On April 22, 1959, Charlie Kirkland sold that half of his twenty acres which is contiguous to the complainants' property to his son, Charles Kirkland Jr., and wife, the respondents. At that time the property was planted in corn up to the turnrow. That same November Charles began building a house on his property. The house was completed in March, 1960. The lawn was seeded before the house was completed and it extended over onto the disputed tract up to the turnrow. In 1962 Charles built a shed and driveway on the disputed strip. From 1963 to 1965 he maintained a hog lot and pasture on the disputed tract. In connection with the hog lot he erected a fence which ran along the turnrow. The fence was taken down either in 1964 or 1965. In 1969 a dispute over the boundary line arose between Charles Kirkland, Jr., and his aunt complainant Minnie Louise K. Cambron. As a result of the dispute Minnie Louise K. Cambron hired James B. Carlton, a professional surveyor, to run the property lines. Carlton determined that the correct line dividing the 40 acre tract into two equal halves ran some 54 feet West of the turnrow or ditch and that most of the Kirklands' lawn, the driveway to the shed, and the shed itself were all on complainants' property.

■ It is a well established general principle of law that title to land may be acquired by adverse possession provided, that for a period of ten years preceding commencement of the action, the claimant has held hostile possession of the land under

a claim of right that was actual, exclusive, open, notorious and continuous. Knight v. Hunter, 155 Ala. 238, 46 So. 235 (1908); Wiley v. Wilson, 284 Ala. 614, 227 So.2d 128 (1969).

This court has also said:

"Where the question is a disputed boundary line between coterminous owners, the statutory evidentiary prerequisites of adverse possession are inapplicable. Tit. 7, § 828, Code 1940; Duke v. Wimberly, 245 Ala. 639, 18 So.2d 554; Stokes v. Hart, 273 Ala. 279, 139 So.2d 300, and cases there cited.

"If a coterminous landowner holds actual possession of a disputed strip under a claim of right openly and exclusively for a continuous period of ten years, believing that he is holding to the true line, he thereby acquires title up to that line * * *. * * *" Sylvest v. Stowers, 276 Ala. 695, 697, 166 So.2d 423, 426 (1964).

 We are of the opinion that the evidence indicates that the requirements of adverse possession have been met in this case. Respondents bought their ten acre tract on April 22, 1959. The testimony shows that following their purchase, they maintained possession of the disputed strip by cultivation of a crop of corn which extended up to the turnrow. Cultivation of the land is a sufficient possessory act to meet the requirements of adverse possession. Withers v. Burton, 268 Ala. 365, 106 So.2d 876 (1959). After the corn was harvested respondents started their house and planted a lawn on the disputed strip up to the turnrow. The testimony reveals that from that time until the present, respondents have mowed and otherwise maintained the lawn on part of the disputed strip. Additionally, respondents cultivated some crops on a part of the disputed land. They have for several years maintained a pasture and hog lot and have erected a shed on the strip with a driveway leading thereto. Respondents' possession of the strip from the time they acquired the prop-

erty on April 22, 1959 continued until complainants filed this suit on August 21, 1969, a period in excess of the ten year statutory requirement. Respondents have also, according to our view of the evidence, presented substantial proof of the other requirements of adverse possession.

We have therefore concluded that the trial court's decree is correct and that it should be affirmed.

In view of this conclusion we need not determine whether the evidence was sufficient to sustain the trial court in its finding that the turnrow or ditch boundary line had been regarded as the line between the parties and their predecessors in title for over twenty years.

Affirmed.

HEFLIN, C. J., and SIMPSON, COLEMAN and McCALL, JJ., concur.